Carole E. Handler (SBN 129381)
chandler@eisnerlaw.com
Christopher Frost (SBN 200336)
cfrost@eisnerlaw.com
EISNER JAFFE
9601 Wilshire Boulevard, Suite 700
Beverly Hills, California 90210
Telephone: (310) 855-3200
Fax:        (310) 855-3201

Attorneys for Plaintiff
ORPHIC LLC

Elizabeth A. Bell (State Bar No. 205868)
ebell@elbelaw.com
8335 Sunset Boulevard, Suite 221
Los Angeles, CA 90069
Telephone: (323) 306-4077
Fax: (323) 656-1396

Attorney for Plaintiff
CURRADO MALASPINA

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>MASSIMO NOCERINO a/k/a MAX NOCE<br><br>Debtor.<br><br>ORPHIC LLC, a California limited liability company; and CURRADO MALASPINA, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>MASSIMO NOCERINO a/k/a MAX NOCE, an individual,<br><br>Debtor-Defendant. | Case No.: 2:15-bk-25947-BB<br><br>**COMPLAINT TO HOLD OBLIGATIONS MASSIMO NOCERINO OWES TO PLAINTIFFS TO BE EXCEPTIONS TO DISCHARGE AND NONDISCHARGABLE; 11 U.S.C. §§523(a)(2)(A), 523(a)(2)(B), 523(a)(4), AND 523(a)(6)** |

COMPLAINT

# INTRODUCTION

1. Plaintiffs and Creditors Orphic LLC and Currado Malaspina file this complaint against Massimo Nocerino, also known as Max Noce ("Debtor-Defendant" or "Noce") seeking a judgment that the obligations owed by Debtor-Defendant to Orphic and Malaspina are exceptions to discharge and thus "non-dischargeable" pursuant to 11 U.S.C. §§523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6).

# JURISDICTION AND VENUE

2. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §157 and §1334. This is a core proceeding pursuant to U.S.C. §157.

3. Venue is proper before this Court pursuant to U.S.C. §1409, because Debtor's Chapter 7 bankruptcy case number 2:15bk-25947-BB is filed and ongoing in the Bankruptcy Court for the Central District of California.

# BACKGROUND FACTS

4. Currently pending in the United States District Court for the Central District of California is an action filed by Orphic and Malaspina against Debtor-Defendant and non-bankrupt defendants Brittney Hastings, and Noce LLC for, among other things, breach of fiduciary duty, fraudulent concealment, constructive trust, and violations of the Lanham Act. That action is stayed against Debtor-Defendant, but is proceeding against the other defendants. Orphic and Malaspina will seek relief from stay of this Court to allow that case to proceed to judgment against Debtor-Defendant. The underlying misconduct forming the basis for that lawsuit constitutes the basis justifying the same relief sought here. More specifically:

5. In or around December 2012, Malaspina, Noce and Hastings, along with third party Valentino Negri ("Negri") formed the Orphic business. Malaspina, Noce, Hastings, and Negri are sometimes collectively referred to as "the Members."

- 1 -
COMPLAINT

6. Orphic was conceptualized as a high-end designer clothing boutique and art gallery located on the Sunset Strip in West Hollywood, California, where a number of significant galleries and designer boutiques are located. It was intended that most of the clothing and art would be sold on consignment. Ownership of the items on display in the boutique would remain with the designers and artists. Orphic would accept the goods as the consignors' agent and sell the goods on the consignors' behalves. Orphic would not make payment to the consignor until the item sold. When the item sold, the consignor would be entitled to receive the proceeds from the sale, minus a commission to Orphic.

7. On or around December 1, 2012, Noce registered the Internet domain name orphicla.com. On or about December 4, 2012, Hastings filled out an application with LegalZoom to create the corporate documents for Orphic. On or about December 7, 2012, the Members entered into the Operating Agreement for Orphic and filed Articles of Organization for the company with the California Secretary of State.

8. On or about January 4, 2013, Orphic opened business checking and savings accounts at Bank of America. At the time the business was founded, it was understood and agreed amongst the Members that Malaspina and Negri, who both reside in Italy, would provide capital investments in the business. It was understood and agreed amongst the Members that Noce and Hastings, who reside in Los Angeles, would contribute their management services to the business in lieu of a capital contribution.

9. On or about January 3, 2013, Malaspina provided $130,000 in cash as an initial capital contribution to Orphic in exchange for a 67% membership interest in the company. Later, Malaspina provided approximately another $100,000 in cash in additional funding for Orphic.

- 2 -

COMPLAINT

10. Had Noce and Hastings disclosed that the business would not be managed in the interest of the LLC, but that they intended to use the business to extract personal benefits for themselves (as explained more fully below), Malaspina would never have invested in Orphic.

11. Noce and Hastings did not make any capital contribution to Orphic. Instead, it was agreed that Noce and Hastings would each be granted a minority membership interest (12% and 11%, respectively) in exchange for contributing their employment services to manage the business.

12. In exchange for a 10% membership interest in the Company, it was agreed that Negri, who resides in Italy, would contribute his employment services by attracting and working with Italian designers and helping curate the items offered for sale. In addition, over the course of the Company's operations, Negri also made investments of cash in the Company.

13. At all relevant times, Noce and Hastings were solely responsible for management and day-to-day operations of Orphic, including oversight of the company's finances, control over its bank accounts and credit cards, and payments owed to consignors and creditors. Noce generally handled the business operations of Orphic, while Hastings was primarily responsible for the website and contributed graphic design services on the company's flyers and other promotional materials.

14. At all relevant times prior to the termination of their management services on or about September 30, 2014, Noce held the office of President, and Hastings held the office of Vice President. Neither Malaspina nor Negri has ever held any office with Orphic.

15. On or about January 8, 2013, Orphic, through Noce, entered into a Standard Office Lease ("Lease") by and between M & A Gabaee, a California limited partnership, ("Landlord") and Orphic for the lease of a retail storefront at 9030 Sunset Boulevard, West Hollywood, CA 90069. The Lease was on a month-

- 3 -

COMPLAINT

to-month basis beginning on March 1, 2013. Orphic was permitted early occupancy to remodel the premises and install telephones, computers and furniture. The base rent was $6,000 per month, including all utilities. Payment of rent was one of the management duties assumed by Noce and Hastings.

16.    From January to March 1, 2013, Orphic substantially remodeled the premises using Malaspina's financial support and contributions. Upon information and belief, the total cost of remodeling was approximately $80,000. The premises were gutted. A new wood floor and walls were installed. A custom marble bar and new light fixtures, new bathroom and fixtures, cabinets and shelves were installed. An alarm system and security cameras were installed.

17.    On or around March 1, 2013, the refurbished Orphic store opened to the public and began selling designer clothing and artwork on consignment. In or around March 2013, Orphic began operating its e-commerce website at the domain www.orphicla.com, through which it marketed and sold its clothing and artwork to consumers throughout the United States and the world. Orphic also owns and operated various social media accounts on Facebook, Twitter, Instagram and Tumblr, all of which Noce and his co-defendants have misappropriated and have continued to operate under the Orphic name in direct violation of Orphic's rights.

### The Orphic Trademarks

18.    Since its founding, Orphic has marketed and sold its designer clothing and artwork under the trade name ORPHIC. The name has become associated with the business of Orphic LLC in the minds of fashion designers, artists and the public. Beginning in or around March 2013, Orphic used a graphical logo ("Orphic Logo") in commerce in connection with its business (prior to March 2013, Orphic used several similar variations of the Orphic Logo before settling on the current version thereof).

- 4 -

COMPLAINT

19. Orphic has common law rights in the ORPHIC trade name and Orphic Logo based on its continuous use of the name and logo both in West Hollywood in connection with its brick-and-mortar retail store, and throughout the United States and internationally in connection with its e-commerce website and various social media websites.

20. Orphic's customers have come to associate the ORPHIC trade name and Orphic Logo with Orphic's retail store and website and various social media websites. Orphic has generated substantial goodwill in connection with the ORPHIC trade name and Orphic Logo, which are distinctive. Thus, the ORPHIC trade name and Orphic Logo serve as valid trademarks for Orphic and its goods and services.

**Noce's and Hastings' Theft of Company Funds and**

**Refusal To Provide an Accounting**

21. Based upon information and belief, over the course of the operation of the business, Noce and Hastings failed to report all income, used Company funds to fund their own personal expenses, and entered into related party transactions and loans without the other Members' knowledge or approval.

22. Upon information and belief, Noce and Hastings used consignment sale proceeds to pay other expenses before paying the consignors of the goods, and engaged in other improper use of Company funds and accounting practices. Indeed, many of the consignors continue to report that they have never been paid, despite the sale of their consigned items.

23. All of these actions not only misappropriated Company funds, they severely impacted Orphic's reputation.

24. Over the course of the business's operations, Noce repeatedly approached Malaspina and Negri asking them to contribute more money to the

- 5 -

COMPLAINT

business. However, when asked to provide accounting records of the Company's business, he failed to do so.

25. On or about September 17, 2014, Noce sent an email to Malaspina and Negri telling them that Orphic was insolvent. Noce told Malaspina and Negri that unless they invested more money, Noce would close the store.

26. On or about September 18, 2014, Malaspina discovered that the passwords to the Company's bank accounts had been changed so that he could not monitor them.

27. Malaspina refused Noce's demands for more money and instead, through his counsel, demanded that Noce provide the bank account log-in information, Orphic's complete accounting records, and its current inventory.

28. Noce has failed and refused, and continues to fail and refuse, to make a full accounting of the Orphic's records available, despite numerous written demands.

29. Thereafter, from September 22, 2014 to on or about October 15, 2014, Noce and/or Hastings made numerous withdrawals and payments from Orphic's checking account, including for personal expenses (*e.g.*, parking, Uber taxi service, wine, groceries, gas) and related party payments (*e.g.*, a check for $2,450 to Brittney Hastings' sister, Mary Hastings, on September 22, 2014).

30. Upon information and belief, Noce and/or Hastings made these withdrawals and payments with full knowledge that certain consignors were still owed money on consignment items that had been sold by Orphic. Some of the consignors' outstanding claims date back to July 2014.

31. From on or about September 23, 2014, Malaspina, through his counsel, made numerous requests for access to the store to take inventory of the merchandise, consignment items, fixtures, improvements, personal property, and other materials

- 6 -

COMPLAINT

therein and to secure the same and for access and control over Orphic's books, records and accounts.

32. Despite these numerous requests, Noce and Hastings repeatedly and wrongfully denied such access and improperly continued to exercise exclusive possession of and control over the same to the exclusion of the other Members and to their detriment, and the detriment of Orphic.

33. On or about September 30, 2014, counsel for Malaspina, who holds a 67% majority of the voting interest in Orphic, notified Noce and Hastings' counsel that he had voted to terminate their management services. Demand was made that Noce and Hastings cease all further actions with respect to any Company funds and accounts, and that they turn over the same to Malaspina.

34. Also on September 30, Malaspina voted to wind-up and dissolve Orphic based upon Noce's representation that the business was insolvent. At the time, Malaspina did not know about Noce and/or Hastings' actions in depleting the Company's bank accounts, or that they had attempted to register the Company's trademarks in their own names, or that they had been secretly planning to take over and continue to run the business without Malaspina or Negri.

35. Noce and Hastings disputed the effectiveness of Malaspina's vote to wind-up and dissolve the company.

36. Upon information and belief, after Noce and Hastings' employment was terminated, and after they were given express notice that they were not to touch the Company's funds, they continued to deplete the funds in Orphic's bank accounts until the accounts were overdrawn.

37. On or about October 7, 2014, Malaspina was finally provided with the log-in information for the Company's bank accounts. Malaspina discovered that Noce and Hastings had depleted and overdrawn the accounts with personal charges at or around this time.

Main Document      Page 9 of 19

38. Thereafter, upon investigation by his counsel, Malaspina and Negri discovered that Noce and Hastings had every intention of continuing the business at the same location using the ORPHIC name and logo with new investors, without Malaspina or Negri, through their newly formed company, Defendant Noce, LLC. On information and belief, this plan was longstanding, indeed, going back to the formation of Orphic, LLC.

39. Upon information and belief, and as demonstrated by their actions, Noce and Hastings had been planning their takeover of the Orphic business for months, and all the foregoing actions were taken with this goal in mind. In particular, Orphic and Malaspina are informed and believe that Noce had been intentionally undermining the value of Orphic in an effort to reduce the purchase price payable by Noce to Malaspina and Negri upon a potential sale of their interests in Orphic to Noce.

40. Upon this discovery, Malaspina's counsel immediately notified Noce and Hastings that there would be no further efforts to wind-up or dissolve Orphic. No certificate of dissolution for Orphic was ever filed with the Secretary of State. Orphic remains an active California limited liability company.

41. To date, Noce and Hastings have actively thwarted, and continue to actively thwart, investigative efforts into their management of Orphic and have attempted to conceal their wrongdoing. Only after Malaspina obtained access to the Company checking account log-in information, which had been withheld by Noce, was he able to discover Noce and Hastings' long-running scheme to use Orphic as their own personal piggy bank, to the detriment of the Company and its Members. Orphic expects that once it, or a Court appointed receiver, gains access to the actual books and records of the Company and the full extent of Defendants' malfeasance can be uncovered, what they know now and can allege in this Complaint only will have scratched the surface of Defendants' misconduct.

- 8 -

COMPLAINT

## Noce and Hastings Fraudulently Apply To Register Orphic's Trademarks Under their Own Names

42. On or about June 16, 2014, Noce and Hastings filed an application with the U.S. Patent and Trademark Office ("USPTO") for registration of the word mark ORPHIC for retail services and on-line retail services. Among other things, the application falsely asserted that Noce and Hastings as individuals were the owners of the word mark ORPHIC, when in fact, Orphic is the owner of the mark.

43. On or about September 17, 2014, Noce and Hastings filed an application with the USPTO for registration of the Orphic Logo for retail services; namely, brick-and-mortar shops and online store featuring women's and men's fashion clothing; clothing accessories, leather goods, footwear, bags, jewelry, artwork. Again, this application also falsely asserts that Noce and Hastings were the owners of the mark, when in fact Orphic is the owner of the mark. The specimens of use submitted with the trademark applications included a photograph of the Orphic storefront, screenshots of Orphic's Facebook page and website, and Orphic's marketing materials. Noce and Hastings falsely represented to the USPTO that these materials were specimens of their own use of the marks at issue, when in fact they are specimens of use of the marks by Orphic.

44. Noce, LLC has never been authorized to use the ORPHIC trade name or Orphic Logo.

45. Neither Noce nor Hastings have ever been authorized to use the ORPHIC trade name or Orphic Logo in connection with any other ventures apart from Orphic LLC. Noce and Hastings filed the trademark applications in their own names without the knowledge or authorization of the other Members of Orphic. Noce and Hastings subsequently assigned their applications and purported rights in Orphic's marks to their company, Noce LLC.

46. On or about October 20, 2014, Orphic notified Noce and Hastings, through their counsel, that any attempt by Defendants to use the ORPHIC trade name or Orphic Logo without Orphic's consent would constitute a willful infringement of Orphic's rights.

47. On or about January 28, 2015 Orphic instituted opposition proceedings before the Trademark Office with respect to Noce LLC's applications for both the Orphic logo and the ORPHIC word mark.  In September of 2015, Orphic and Noce LLC stipulated to suspend the opposition proceedings pending the outcome of Orphic's pending lawsuit against Noce, Hastings, and Noce LLC.

**Noce and Hastings Transfer Orphic's Lease to Their Company,**
**Noce LLC, and Take Over Orphic's Business**

48. Upon information and belief, on or about October 1, 2014 Noce, Hastings, and Noce, LLC entered into a new lease for the retail storefront premises located at 9030 Sunset Boulevard, West Hollywood, CA 90069, which comes with all of the improvements made thereto by Malaspina and Negri's investment in Orphic.

49. On or around October 2, 2014, Noce and Hastings formed Noce, LLC for the purpose of taking over the retail storefront, website, and social media accounts and generally operating the same business, including using the name ORPHIC and the Orphic Logo in connection therewith.

50. On or about October 22, 2014, Noce and Hastings, through their counsel, contacted Orphic's consignors and other creditors falsely representing to them that Orphic had ceased its operations and was in the wind-up process. Given the importance of attracting designers and artists to consign their work to Orphic, these falsehoods cut to the very heart of Orphic's business.  They further asserted that since their employment with Orphic had been terminated, they were not responsible for Orphic's outstanding debts or for any missing consignment items,

and told the consignors to contact counsel for Orphic. Finally, they further informed Orphic's consignors that they would be embarking on "a new venture" and promised to "keep them updated."

51. Upon information and belief, Defendants subsequently contacted Orphic's consignors and customers and, through a series of untruths, solicited them into doing business with Noce, LLC instead of with Orphic, thereby interfering with and causing harm to Orphic's business relationships.

52. Through their actions, Defendants have misappropriated corporate opportunities in Orphic's established line of business, the continuation of which Orphic had an interest and expectancy, and the financial resources to pursue.

53. Noce and Hastings failed to disclose the material facts as to the corporate opportunities to Orphic's other Members, failed to offer Orphic the first right to obtain the corporate opportunities, and did not seek authorization or approval from Orphic's other Members before they misappropriated the opportunities for themselves.

54. On or about November 6, 2014, Noce, Hastings, and Noce, LLC re-opened the retail store at the same location, using the ORPHIC name and Orphic Logo without Orphic's authorization to market and sell designer clothing and artwork.

55. Also on or about November 6, 2014, Defendants re-opened the ecommerce website at the domain, orphicla.com, and continued to wrongfully administer Orphic's social media accounts, using the ORPHIC name and Orphic Logo without Orphic's authorization to market and sell clothing and artwork.

56. Defendants' unauthorized use of the ORPHIC name and Orphic Logo is infringing and deceptive. Defendants are deceiving consumers, competing unfairly, falsely passing themselves off as Orphic, and unfairly trading on,

appropriating and tarnishing the reputation and goodwill of Orphic for their own commercial gain.

57. The adoption and use of Orphic's name and logo was and is deliberate, intentional, knowing and willful and done with the intent to confuse, mislead, or deceive the public, thereby causing Noce, Hastings, and Noce LLC to profit to an extent which they would not otherwise enjoy.

58. As referenced above, Orphic and Malaspina are pursuing claims in the federal district court for these wrongdoings. A motion for relief from stay will follow, to allow those claims to proceed against Debtor-Defendant. In the meantime, the obligations owed to Orphic and Malaspina, based on the same misconduct described above, should be determined to be non-dischargeable.

## FIRST CAUSE OF ACTION

**(Nondischargeability Per 11 U.S.C. §523(a)(2)(A)**

**For False Pretenses, False Representation, Or Fraud)**

**(By All Plaintiffs Against Debtor-Defendant)**

59. Orphic and Malaspina referenced and incorporate Paragraphs 1 through 58 above, as if set forth fully herein.

60. For all the reasons discussed above, the obligations owed to Orphic and Malaspina were procured by false pretenses, false representation, and fraud.

61. As detailed above, Debtor-Defendant and Hastings were in a fiduciary relationship with Malaspina and Orphic.

62. Upon information and belief, Debtor-Defendant and Hastings had been planning to subvert and take over the Orphic business for their own purposes from the very moment Malaspina's participation was secured and Orphic was formed. Debtor-Defendant and Hastings concealed this plan from Malaspina, who would not have invested in Orphic had he known Debtor-Defendant's and Hastings' true intentions.

Case 2:16-ap-01028-BB    Doc 1    Filed 01/19/16    Entered 01/19/16 14:23:24    Desc
Main Document    Page 14 of 19

63. To induce Malaspina to make his initial capital contribution to Orphic, and to continue making further investments in Orphic over the course of its operation, Debtor-Defendant and Hastings continued to actively conceal their true plan from Malaspina.

64. Debtor-Defendant and Hastings had exclusive knowledge of the fact that in or around June 2014, they had applied for registration of the Orphic Logo with the USPTO in their own names – not in the name of Orphic LLC, the rightful owner of the proprietary rights in the Orphic Logo. Debtor-Defendant and Hastings concealed from Malaspina the critical fact that they filed the application for registration of the Orphic Logo in their own names.

65. Debtor-Defendant and Hastings had exclusive knowledge of the fact that in or around September 2014, they had applied for registration of the ORPHIC word mark with the USPTO in their own names – not in the name of Orphic LLC, the rightful owner of the proprietary rights in the ORPHIC mark. Debtor-Defendant and Hastings concealed from Malaspina the critical fact that they filed the application for registration of the ORPHIC word mark in their own names.

66. Debtor-Defendant and Hastings also had exclusive knowledge of Orphic's financial information, which they concealed from Malaspina. Among other things, they concealed their use of corporate funds for personal use and their failure to pay consigners what they were owed. Further, upon information and belief, Debtor-Defendant made statements to Malaspina intentionally obscuring the true financial health of the business in order to induce Malaspina to continue investing in Orphic over the course of its operation.

67. Malaspina did not know the facts that were concealed by Debtor-Defendant and Hastings.

68. Under their fiduciary duties to Malaspina as Members and as officers, Debtor-Defendant and Hastings had a duty to disclose the concealed information to

- 13 -
COMPLAINT

Malaspina.

69. In concealing the facts, Debtor-Defendant and Hastings intended to and did deceive Malaspina. As described herein, that deception was essential to their overall plan to induce Malaspina to invest substantial money in starting up the Orphic business, and then exclude Malaspina and appropriate the benefits of Malaspina's investment for Debtor-Defendant and Hastings' own commercial gain.

70. Upon information and belief, Debtor-Defendant has in the past conducted essentially the same deceptive scheme to defraud other, unrelated investors in his previous business ventures, including in connection with a prior clothing store similar to Orphic, Sorum Noce, which Debtor-Defendant operated with ex-Guns N' Roses drummer Matt Sorum.

71. As a proximate result of the foregoing misrepresentations and concealments, Malaspina was induced to invest initial and subsequent sums of money in Orphic. But for these concealments, Malaspina would not have made either his initial capital contribution in Orphic or his subsequent investments in the business.

72. As a result of the foregoing, Orphic and Malaspina have suffered substantial damage. The above misrepresentations and concealment were a substantial factor in causing this harm to Orphic and Malaspina.

73. Given that the business of Orphic is largely dependent on the goodwill of its consignors, Defendants' concealment of their failure to manage the business in the interest of Orphic was extremely damaging to Orphic and its majority Member, Malaspina.

74. The foregoing establishes that the obligations owed to Orphic and Malaspina should be determined to be nondischargeable.

## SECOND CAUSE OF ACTION

**(Nondischargeability Per 11 U.S.C. §523(a)(2)(B)**

**For Materially False Statements In Writing)**

**(By All Plaintiffs Against Debtor)**

75. Orphic and Malaspina referenced and incorporate Paragraphs 1 through 74 above, as if set forth fully herein.

76. As explained above, the obligations owed to Orphic and Malaspina were procured by materially false statements in writing, including to, among others, representatives of Orphic and Malaspina, consignors, and the USPTO, which were not reasonably known to Orphic and Malaspina;

77. Orphic and Malaspina have been damaged by the material false statements; and

78. The foregoing establishes that the obligations owed to Orphic and Malaspina should be determined to be nondischargeable.

## THIRD CAUSE OF ACTION

**(Nondischargeability Per 11 U.S.C. §523(a)(4)**

**For Breach of Fiduciary Duty/Embezzlement)**

**(By All Plaintiffs Against Debtor)**

79. Orphic and Malaspina referenced and incorporate Paragraphs 1 through 78 above, as if set forth fully herein.

80. As detailed more fully herein, at all relevant times Debtor-Defendant was, and continues to be, a Member of Orphic. In addition, until terminated by Orphic, Debtor-Defendant, along with Hastings, was an officer of Orphic and actively managed the company's day-to-day operations.

81. Director-Defendant owed and continues to owe fiduciary duties to Orphic and its Members, including Malaspina. By reason of the fiduciary

relationships, Debtor-Defendant owed and continues to owe Orphic and its Members, including Malaspina, the highest obligations of good faith, fair dealing, loyalty, and due care.

82. Debtor-Defendant has and had a duty to Orphic and its Members to prudently supervise, manage and control Orphic's operations. By reason of his other actions described herein – either directly or by aiding and abetting Hastings – Debtor-Defendant breached his fiduciary duties owed to Orphic and Malaspina by acting and continuing to act for his own benefit and to the detriment of Orphic and Malaspina. These actions not only breach their corporate duties; they were undertaken in the personal interests of Debtor-Defendant and Hastings. Debtor-Defendant actions were done without due care for the protection of Orphic and Malaspina's rights.

83. By his actions, Debtor-Defendant – either directly or by aiding and abetting Hastings – abandoned and abdicated his responsibilities and duties to prudently manage Orphic.

84. By Debtor-Defendant's actions in terminating or allowing the Lease to expire, by entering into a new lease at the same storefront location, and by contacting consigners and others who had established business relationships with Orphic, which Orphic had the interest, expectancy, and financial resources to continue, Debtor-Defendant – either directly or by aiding and abetting Hastings – breached his fiduciary duty of loyalty to the Company by misappropriating its corporate opportunities.

85. As a direct result of these breaches of fiduciary duties, Orphic and Malaspina have suffered and will continue to suffer great damage, including lost profits and the tarnishing of Orphic's business, goodwill, and reputation. Debtor-Defendant's misuse of company funds and assets has had a significant impact on Orphic's financial health and the valuation of its business.

86. The foregoing establishes that the obligations owed to Orphic and Malaspina should be determined to be nondischargeable.

## FOURTH CAUSE OF ACTION

### (Nondischargeability Per 11 U.S.C. §523(a)(6)

### For Willful and Malicious Injury)

### (By All Plaintiffs Against Debtor)

87. Orphic and Malaspina referenced and incorporate Paragraphs 1 through 86 above, as if set forth fully herein.

88. As explained above, the obligations owed to Orphic and Malaspina were procured by willful malicious injury to Orphic and Malaspina;

89. Orphic and Malaspina have been damaged by the willful and malicious conduct; and

90. The foregoing establishes that the obligations owed to Orphic and Malaspina should be determined to be nondischargeable.

## PRAYER FOR RELIEF

Wherefore Orphic and Malaspina prayer for relief as follows:

1. For an Order holding that the obligations owed by Debtor-Defendant to Orphic and Malaspina are exceptions to discharge and thus "non-dischargeable" pursuant to 11 U.S.C. §§523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6);

2. For pre- and post-judgment interest, costs of suit, and attorney's fees as applicable; and

3. For such further and other relief as the Court deems appropriate.

1  Dated:  January 19, 2016              EISNER JAFFE

3                                        By: /s/ Christopher Frost
4                                            Christopher Frost
                                             Attorneys for Plaintiff
                                             ORPHIC, LLC

6
7  Dated:  January 19, 2016

8                                        By: /s/ Elizabeth Bell
                                             Elizabeth Bell
9                                            Attorneys for Plaintiff
                                             CURRADO MALASPINA

- 18 -

COMPLAINT